Ms. Feldman is up. Ms. Feldman? I'm sorry, Your Honor. I think I forgot to turn my mute off. I apologize. I was talking to myself. A common problem. Good afternoon, Your Honors. Arza Feldman, SCJA Counsel for the Appellant Thomas Connerton. I would like to focus my argument this afternoon on the jury issues presented in this case. The court erred in one instance in discharging a jury and in two instances in maintaining or allowing the juror to continue. With respect to discharging the juror, during the deliberations a juror did not appear. When the court finally reached the juror, the juror explained that she woke up late, was not feeling well, and was dizzy. In discussing the matter with counsel, the court said basically that it had three choices, either to hold a mistrial, excuse the juror, or discharge the juror, leaving only 11 jurors to deliberate or wait one day. The defendant sought either a mistrial or was willing to wait the one day. However, after further discussions, the court determined that it would discharge the juror. And it is the defendant's position this was error. Losing the jury was the reason that the court gave for discharging this one juror. And quite frankly, it's our position that was in essence in the parallel issues of keeping a juror early on in the case. And I'll get into that a little later. The court's view that the juror, which they termed juror number 11, may not be able to or was uncertain if they would be able to deliberate the next day, does not rise to the level of good cause or just cause. There is a point, I think, in the trajectory of when these determinations are made that would fall below the threshold. But the government's argument is that there really shouldn't be a threshold, that there should be a discretion, full discretion, in the court to determine when a jury should be discharged. However, there ought to be some threshold below which no reasonable jurist would act to discharge a juror. And it's our position that simply saying that one is dizzy without further information as to whether or not the juror could continue the next day was something that fell below that threshold. In this court's decision, in Simmons, is distinguishable because in Simmons, as this court said, the district court was not to conduct a further inquiry only because there was clearly another juror who they believed would be absent and they would definitely lose that other juror. But in this case, there was no real basis to believe that other jurors were going to drop out or have any further difficulties if they had waited the one day. And we don't know because the record's not clear as to what happened with that other juror. There was certainly no other discussion with that juror as far as the record indicates as to whether or not they could appear the next day or what their situation was even later on in the day. There was no risk of, as I indicated, of an absence of another jury. And it's our position that the court's exercise of discretion in this particular case was not prudent. The government accuses the defense of being inconsistent, having an inconsistent argument, and that the defense has raised the issue of the pregnant juror, but now claims no risk to the jury. However, I don't believe that those two arguments are inconsistent. In fact, the juror was already seated, the pregnant juror, which we'll discuss a little later, and there was no indication that she was going to leave at the late date during the deliberation process. The government, in fact, it's our position, is being inconsistent in that it argues that the pregnant juror could serve, but now argues that she was at risk of being lost. There was really no imminent threat that the jury would fall apart at the time of the deliberations, and therefore it's our position that the court should have waited the additional day to determine whether or not the two jurors that the court erred in not discharging, that being the pregnant juror and the sleeping juror. Certainly, when the court observed that the juror was sleeping, it was clear to the behavior later on in the trial. The pregnant juror was clearly upset and in distress at the commencement of the proceedings, and gave the court every indication that she really did not believe that she could properly serve. Instead of releasing either of these jurors or discharging them, the court, as to the pregnant juror, tried to accommodate the needs of the juror and refused to replace her. The government argues that this waived the defendant's objection. It's our position that clearly the defendant did not waive the objection, but found himself in a situation where the court suggested certain accommodations. Of course, the defendant would have preferred accommodating the juror than not accommodating the juror, but certainly did not waive the objection that the defense attorney raised to her continuation in the case. You have a minute left. Okay. I would just argue that the court really abused its discretion in both discharging the juror that was simply dizzy and not waiting for the extra day, and also keeping the juror, certainly the pregnant juror, who was asking very much not to serve and had a lot of concerns about staying on the jury. As to the rest of the arguments, I would rest on my brief. Thank you very much, Your Honor. Thank you, Ms. Selman. Judge Keyes, any questions? No questions. Thank you. Judge Bianco. Yes, thank you. On the juror during deliberations, Ms. Selman, it looked like defense counsel asked twice for a mistrial. I don't see anywhere in the record where defense counsel suggested putting it off for a day. The government suggested putting it off for a day. Could you point me in the record where defense counsel said, well, if you're not going to grant the mistrial, we want you to wait until tomorrow? Let me see if I have that. My point is, I don't think it happened. I looked through the entire exchange. It didn't seem like defense counsel proposed that as an alternative. Let me just ask you this. If the juror could not return the next day because she was still sick and the judge confirmed that, you would concede there would be no problem, right? Yes, I think it's easy. The judge didn't inquire further? Correct. It's our position that certainly he just, in essence, gave up. The problem is, if you're a district judge in this situation, let's assume he called her, as you are urging us to now say that he should have. The juror, at best, the juror had just reported being sick and dizzy. If the judge had called her and said, do you think you're going to be better by tomorrow? Even if the juror said, yeah, I think I'll be better by tomorrow, how could the juror possibly know whether or not she was going to continue to be dizzy for the rest of the day into tomorrow? There'd be no way of determining that, and the judge has to make a decision at that point, right? No, I don't know that the judge had to make a decision at that point. I mean, I think the judge could have waited. I believe it was in one of the other cases that were cited in the brief where the court, in fact, did wait. They waited till next day, and when in actuality, on the next day, there was still a problem, then they did discharge the juror. So you're saying the judge has to wait a day? The judge doesn't have the discretion to, if a juror says, I'm not, you know, I'm dizzy, I don't know when I'm going to be better, the judge has to wait a day to see if the juror gets better? Otherwise, it abuses its discretion? Well, the question is, did the judge know that when the juror would be better? I don't think that question was even asked in this particular case. It's not a situation where a juror says, I have to go to a graduation, or something came up, I'm only going to miss one day, and the judge knows with a reasonable degree of certainty, it's only going to be one day. That's a different scenario than someone who's sick, and you don't know, no matter what the juror says when you call them, you have no idea what they're going to feel like the next day. I understand exactly what the court is thinking, but in this particular case, you are now going into not just an alternate jury, this took the jury from 12 to 11, which is really a deprivation of the defendant's right to have a full jury. Not according to the rule. The rule envisions exactly this scenario. It's not a deprivation of any right under the rule. Well, it does, but I think that there has to be a higher threshold. I think that you can't simply just rely on the juror saying, I'm busy today, and not even wait, especially, I don't think the government indicated that it didn't want to wait. The defense indicated that it would wait, and certainly, I think that this particular set of facts fell below the threshold that this court has ever thought was appropriate for the court to go from 12 to 11. I know the rule allows for that, but where do we draw the line? Do we just say, well, if I said I had a headache and I didn't want to come in, is that sufficient to deprive the defendant of a full jury, even though the rule allows for a smaller jury? That's not the jury that necessarily was picked. I would just argue that in this particular case, and certainly under this fact pattern, there has to be some level below which a judge does abuse his discretion. Otherwise, there'd be no real rule. All right. Thank you, Ms. Feldman. I have no other questions that the judge could answer. Okay. We'll turn to Ms. Clark for the government. Good afternoon, Your Honors. May it please the court, I'm Lauren Clark on behalf of the United States, the appellee in this case. I also represented the United States in the case below including at trial. I'll address each of Attorney Feldman's arguments in turn. They all are a series of issues regarding this trial jury, and none of which have merit. The first she raises relates to the sick juror who was unable to deliberate, and so there were a number of questions raised. It's the government's position that the court had sufficient information in this case to excuse the juror. I think it's accurate to say that the judge at the time didn't know the length of her absence beyond the one day that she would not be able to deliberate. But the court knew it would be at least that day. The juror had indicated to the court that she had woken up late. She was not feeling well. She was dizzy. And beyond that, the court also knew that up until now, which is essentially three weeks of trial, this is a responsible juror. There's no evidence that she had been late before, that she had missed portions of the trial, or she had any issues. And the court made concerted efforts to contact her. I think the record shows that at 9.30, when the parties convened and were made aware of this missing juror, the court had already attempted to contact this juror several times and put off making a decision until it could reach her. After an hour of continuance to see if the juror could be located or information could be found, it was at that point that the court indicated there were these considerations. So it certainly wasn't an impulsive decision made by the court. And the court weighed out not only the reason for the juror's absence, but also looked at it holistically to determine whether or not there was good cause beyond the simple fact that one juror would be missing one day of these deliberations. I think the court acknowledged there was a fairly lengthy task before the jury. The jury was going to be deliberating on 34 counts, hundreds of exhibits, and after hearing from 20 witnesses over the course of a three-week trial, I think the court considered that task before the jury, also in the context of how difficult it had been to maintain what started out as a 12-person jury was to alternate over the course of those three weeks. And I think the court acknowledged in making its decision that there was a sort of hobbling along of this jury, to use Judge Underhill's words. The transcript shows that we lost both alternates within the first three days of trial. One had a job interview that had popped up. One ended up knowing one of the witnesses and was excused. And then you had these two other potential juror issues. One juror who recognized defense counsel at one point, but the parties agreed, and the court kept that juror on the jury. And then you had the pregnant juror, who I'll discuss next, but who basically told the court, the quicker, the better. I think those were her words. She acknowledged that it was uncomfortable being pregnant on the jury, but the quicker things moved along, the more likely it would be that she would be able to do her job. I think the court also looked at the impact of a potential mistrial or the impact of losing the jury if they waited that extra day. And it was in terms of the time and resources of not just the court, but there were a number of victims, and particularly vulnerable victims, I think, 10 of which testified at trial. A number of them had been manipulated by the defendant. They had to take the stand. They had to explain how they trusted him, how they gave him money after an intimate relationship with him. It was a very emotional state for some of the victims. The court had to also consider some of the victims and other witnesses were coming from out of state and had to consider the time and resources that had already been extended by the other jurors. They had taken three weeks out of their own lives, their own jobs to hear the evidence and to begin to deliberate. The court also considered the fact that there would be a significant strain on everyone if the court was required to do it again. And I think that it's not simply that there was one sick juror and no risk elsewhere. The court, in fact, made a fairly clear record that it was considering everything when determining that there was good cause to let the jury proceed with 11. With respect to the second issue, the pregnant juror that Attorney Feldman raises, I don't think there's any inconsistencies in the government's position. It's not black and white. Either you can serve or you can't serve. I think the court was very aware of that. When it saw a juror who was crying in the hallway and did the right thing, pulled her in to determine in front of the parties the reason for its observation and how it could address potential concerns. I think it's very clear from the record that she was not asking to be excused. She was very much concerned with her comfort. She said sitting all day, her feet were swollen, she came home, she didn't drink enough water. And the parties discussed what to do. I think instead of, I think the characterization that the judge denied her request to be removed is not supported by the record. She expressed a concern over her comfort. The judge raised potential solutions to it. There was a voir dire of her. He suggested accommodations. He noted that they would be taking more breaks. She could ask for breaks. He reminded her at one point that she should have water with her when she was sitting. At one point, we had actually changed around the chairs, and this is in the transcript. She had an easier seat. She was seated at the end of the jury box. It was suggested that she might even want to stand up and take extra stretches. All of these accommodations were suggested to her. The court outright asked whether or not she would be willing to try these out before there was a further determination about whether or not she could continue or should be The pregnant juror, she was able to take those accommodations and continue to serve. There's no evidence further in the transcript for the rest of the trial that she was complaining that the defendant or the government saw anything that would lead them to believe she was not able to continue her service. The court also didn't seem to make a record of any concerns that it saw. I think the court was very in tune with the jury and made a number of observations over the course of trial about the wellness and attentiveness of the jurors. I don't see there being error or an abuse of discretion in that regard. With respect to what the defendant claims is the sleeping juror, I think it's clear that there's no discussion of a juror actually sleeping in the transcript. The quote is the judge observed a juror nodding off at one point in the trial. And again, instead of the court not doing anything, in fact, the court did the very opposite. It did what it was required to do when it makes those types of observations. It's the response they raise this observation. And I think if you look at the transcript, the judge actually asked for a break after making this observation. He's essentially stopping the conduct, this nodding off before there is an actual sleeping juror on the jury. He raises it with the court. He explains the reason for his concerns. And I think at one point, the defendant argues in the brief, in his brief that it's that there was no, oh, there was, I apologize. Excuse me, you have one minute left. Thank you. I think what's important about the sleeping juror here is that the evidence that the jury was listening to was scheme evidence. The court made that very clear. The testimony was during Lorraine Ward. She was the eighth victim investor to testify. She was the fifth victim Mr. Connerton met on match.com. In some ways, the court was clear that it viewed her evidence as not being, is being somewhat duplicative to the others in that, again, it was a scheme and some of the evidence may have been reiterated by previous victims. They all met him on match. They were told the same lies. They all gave him money. And he, the judge attributed that to the reason for this juror's inattentiveness. And the very last issue, I actually have nothing further, Your Honor. If the court has no further questions, then I would like to end my briefing. Thanks very much. Judge Kearse, any questions? No questions. Thank you. Judge Bianco? No questions. Thank you. All right. So, Ms. Selvman has two minutes reserved for rebuttal. Thank you, Your Honor. I believe that I found the page that Judge Bianco was asking me for. It's in the transcript at page 2491, where we quote in the brief that the defense counsel said that if the, that he had chosen a postponement. So, and if not, then he wanted a mistrial. I wanted to bring that to the court's attention. With respect to the pregnant juror, the government wants the court to believe that she was willing to act with the, you know, continue with the accommodations. But the court, in fact, told her at, I believe it's page 235 of the transcript, that if she were excused, then, and the court said to be completely frank, if we get under 12 jurors and excuse her, the court would have to start all over again. So, there was certainly this belief by the judge at the time that he was concerned that he was not going to have the requisite number of jurors. And it made it very clear to her that he did not want to excuse her. And people are not always artful in the way that they ask for things. And certainly, this is a juror sitting before a federal judge in a federal trial asking, quite frankly, that, you know, I'm very uncomfortable. This is going to be very difficult for me. I want to take the time off that I can from work to spend with my other child before I give birth and so on and so forth. So, I think that, all in all, the record is replete with, unfortunately, an abuse of discretion by the district court in not properly addressing the juror issues. And I would ask on that basis that the court reverse and remit the matter. Unless the court has any other questions. Again, I rest on the brief. Thank you, Ms. Sullivan, very much. We'll reserve decision and we'll turn to the third case.